IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

JAMES JACKSON    :
         :
  Plaintiff,   :  CIVIL ACTION 10-0304-WS-M
         :
v.        :
         :
DR. BENJAMIN, et al.,  :
         :
  Defendants.   :


## REPORT AND RECOMMENDATION

Plaintiff, an Alabama prison inmate proceeding *pro se* and *in forma pauperis* filed a Complaint under 42 U.S.C. § 1983. This action was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4), and is now before the undersigned on the special report converted by order to a motion for summary judgment of Defendants Correctional Medical Services, Inc. ("CMS"), Dr. Delano Benjamin ("Dr. Benjamin"), Billy Stuckey, LPN, Shaun Geohagan, CRNP ("Geohagan"), Jennifer Covan, LPN ("Nurse Harris"), and Leslie McMillan, LPN (Doc. 27); Plaintiff's opposition thereto (Doc. 29); and Plaintiff's affidavit (Doc. 32).

For the reasons stated below, it is recommended that the motion for summary judgment of Defendants be granted, and that Plaintiff's action against these Defendants be dismissed with prejudice.

## I. SUMMARY OF FACTUAL ALLEGATIONS

1. From its review of the record, the Court summarizes the parties' allegations that are material to the issues addressed in this Report and Recommendation.

2. At the time of the incident made the basis of this litigation, Plaintiff was an inmate incarcerated at Fountain Correctional Facility in Atmore, Alabama (see Doc. 4, p. 1).

3. Plaintiff alleges that Dr. Benjamin "negligently failed to exercise such reasonable care[], skill and diligence as other (sic)" because Plaintiff was denied "adequate medical care" (Doc. 4, p. 5).

4. Plaintiff alleges that Bill Stuckey, LPN delayed getting Plaintiff "proper[] medical care" from July to October 2008. (Doc. 4, p. 5).

5. Plaintiff alleges that Shawn Geohagan, Nurse Practitioner, delayed in getting Plaintiff proper medical care because Geohagan denied Plaintiff adequate medical care between July and October 2008 (Doc. 4, p. 6).

6. Plaintiff claims that Leslie McMillan, an employee of CMS, delayed in getting the Plaintiff proper medical care (Doc. 4, p. 13).

7. Plaintiff alleges that CMS is a "private corporation that provides medical services to the inmates (sic) population

at the Fountain facility, pursuant to a contract with the Alabama Department of Corrections, a state agency" and that CMS implemented policies that were deliberately indifferent in its treatment of prisoners and were carried out by its employees (Doc. 4, p. 13).

8.   On or about July 1, 2008, Plaintiff "was bitten on the back of his right leg" by what is believed to be a brown recluse spider (Doc. 4, p. 4; Doc. 27-3, p. 21).  According to Plaintiff, he reported the bite to Nurse Harris, and "Nurse Harris informed the Plaintiff that there was nothing she could do until the abscess drained," and gave the Plaintiff aspirin (Doc. 4, pp. 4).  Plaintiff indicates that this action constituted the first delay in his treatment (Doc. 4, p. 4). However, the medical records demonstrate that the Plaintiff's wound was cleaned and cared for as well (Doc. 27-3, p. 6).

9.   Plaintiff claims that by the following day the abscess had burst, and Dr. Benjamin saw the Plaintiff (Doc. 4, p. 4). According to Plaintiff, Dr. Benjamin examined the infected area, and prescribed the Plaintiff medicine, but did not prescribe any antibiotic (*Id.; see also* Doc. 27-3, p. 6).  However, the records shows that Dr. Benjamin cleansed the area, cultured the wound, applied Bacitracin, and put a dressing on the wound as well (Doc. 27-3, p. 21).  Additionally, the Plaintiff refused

for his wound dressing to be changed on July 5, 2008 (Doc. 27-4, p. 24).

10.   According to the Plaintiff, approximately fourteen days later[1] he was seen by Dr. Benjamin and NP Geohagan, and was subsequently placed in the facility's infirmary ward with directions to have antibiotics administered for seven days (Doc. 4, p. 9). However, the record reflects that Dr. Benjamin saw Plaintiff on July 8, 2008, July 10, 2008, July 14, 2008 and July 21, 2008 (Doc. 27-3, pp. 20-21).

11.   Plaintiff alleges that he was denied daily bandage changes (Doc. 4, p. 9). Yet during July 2008, the record reflects that Plaintiff's bandages were changed regularly (Doc. 27-3, pp. 20-21, Doc. 27-4, pp. 21-23), and that Plaintiff himself refused to have his bandage changed on at least one occasion (Doc. 27-4, p. 24).

12.   On August 6, 2008, Dr. Benjamin performed surgery on the infected area (Doc. 27-3, p. 18). Plaintiff complains that this surgery caused "severe damage to the muscle tissues[.]" (Doc. 4, p. 9). Plaintiff further complains that Dr. Benjamin recommended that he see a specialist at that time, but Plaintiff

---

[1] The Court interprets the Plaintiff's use of the words fourteen days later to mean fourteen days after his first visit with Dr. Benjamin.

was not taken to a civilian medical specialist until September 2008 which was "two months after [] Dr. Benjamin recommended special care." (*Id.*).[2]

13.   Contrary to Plaintiff's allegations that he was denied medical treatment for his spider bite wound, the record reflects that Plaintiff was treated on each of the following dates for this incident: July 1, 2008 by Dr. Benjamin (Doc. 27-3, p. 21), July 8, 2008 by Dr. Benjamin (Doc. 27-3, p. 21), July 10, 2008 by Dr. Benjamin (Doc. 27-3, p. 21), July 22, 2008 by Geohagan (where debridement of Plaintiff's wound took place and the area was cleaned) (Doc. 27-3, p. 20), July 29, 2008 by Geohagan (Doc. 27-3, p. 20), August 4-5, 2008 by Dr. Benjamin (Doc. 27-3, p. 18), August 6, 2008 by Dr. Benjamin who performed surgical debridement on Plaintiff's wound (Doc. 27-3, p. 18), August 7-8, 2008 by Dr. Benjamin (Doc. 27-3, pp. 18-19), August 11, 2008 by Dr. Barnes (Doc. 27-3, p. 18), August 14, 2008 by Geohagan (Doc. 27-3, p. 17), August 20, 2008 by Geohagan (Doc. 27-3, p. 17),

_____

[2] The Court is unable to find in the medical record where Dr. Benjamin referred the Plaintiff to see a civilian medical specialist. However, the Plaintiff claims that Dr. Benjamin performed surgery in July 2008, while the medical records reflect that Dr. Benjamin debrided Plaintiff's wound in August 2008.  For the purposes of this summary judgment motion, the Court accepts Plaintiff's claim that he was referred to an outside specialist as of July 2008 and that there was indeed a two month delay.

August 21, 2008 with a note that the inmate was verbally abusive
(Doc. 27-3, p. 17), August 25, 2008 by Geohagan with a note that
patient refused wound therapy (Doc. 27-3, p. 17), August 28,
2008 with a note that the inmate was verbally abusive and
refused wound care (Doc. 27-3, p. 16), August 29, 2008 (Doc. 27-
3, p. 16), September 1, 2008 by Geohagan specifically to place a
boot on Plaintiff's leg to aid in healing the Plaintiff's wound
(Doc. 27-2, p. 5; Doc. 27-3, p. 16), September 5, 2008 by Dr.
Gaston (Doc. 27-3, p. 15), September 11, 2008 (Doc. 27-3, p.
15), September 12, 2008 by Dr. Gaston (Doc. 27-3, p. 15),
September 15, 2008 by Dr. Lopez (Doc. 27-3, p. 15), September
18, 2008 by Dr. Barnes (Doc. 27-3, p. 14), September 22, 2008 by
Dr. Lopez (Doc. 27-3, p. 14), September 23, 2008 by Dr. Lopez
(Doc. 27-3, pp. 13-14),  September 24, 2008 by Dr. Lopez (Doc.
27-3, pp. 13), September 26, 2008 (Doc. 27-3, p. 13), October
16, 2008 (Doc. 27-3, p. 13), October 17, 2008 (Doc. 27-3, p.
12), and October 22, 2008 by Dr. Lopez (Doc. 27-3, p. 12).

14.  Additionally, on August 13, 2008, August 15, 2008,
August 22, 2008, September 23, 2008 and October 22, 2008, the
Plaintiff refused medical care and/or was non-compliant in his
care (*see* Doc. 27-4, pp. 7-8, 14-16, 38).

15.  On October 23, 2008, Plaintiff was removed and brought
to the Mobile Infirmary where Plaintiff was seen by the vascular

surgeon Dr. Pheiffer and received a CT Angiogram (Doc 27-2, p. 7; Doc. 27-3, pp. 34-35).[3] Plaintiff later had "by-pass surgery" on October 29, 2008 (Doc. 27-2, p. 7).[4] On September 24, 2008, Plaintiff refused medical treatment, specifically to receive an EKG (Doc. 27-4, p. 10). Plaintiff again received medical attention on the following dates: November 20, 2008 (Doc. 27-3, p. 5), November 25, 2008 by Dr. Lopez (Doc. 27-3, p. 5), December 5, 2008 (Doc. 27-3, p. 5), December 15, 2008 by Dr. Lopez (Doc. 27-3, p. 4), December 22, 2008 by Dr. Lopez (Doc. 27-3, p. 4), December 29, 2008 by Dr. Lopez (Doc. 27-3, p. 4), and December 31, 2008 by Dr. Lopez (Doc. 27-3, p. 4).

16. On January 7, 2009, Plaintiff refused to see Dr. Lopez for wound treatment, and the medical record includes the following note: "Mr. Geohagan is not a Dr. I don't care what he

---

[3] The Court notes that two years earlier in November 2006 Dr. Barnes recommended that Plaintiff should have a consult with a vascular surgeon (Dr. Pheiffer's name was included in written list) due to poor circulation in Plaintiff's legs (Doc. 27-3, pp. 23-24). Plaintiff was scheduled to see a specialist in December 2006, but Plaintiff refused to see the vascular surgeon (Doc. 27-3, p. 22). Dr. Lopez states that this "lack of circulation contributed to the [spider bite] wound not quickly healing" in August and September of 2008. (Doc. 27-1, pp. 3-4).

[4] It is unclear from the record what type of "by-pass" surgery took place, but in the context of the record as a whole, the Court interprets this surgery to be vascular by-pass surgery related to Plaintiff's wound treatment.

says. He can do whatever he wants." (Doc. 27-3, p. 39). On January 15, 2009, Plaintiff again refused medical treatment (Doc. 27-4, p. 2).[5]

17. As of February 9, 2009, Dr. Lopez noted that the Plaintiff's ischemic ulcer in the right leg had resolved (Doc. 27-3, p. 9).

18. Plaintiff requests that the Court find that the Defendants "were each negligent as set forth according to the substantive law of the State of Alabama." (Doc. 4, p. 7). Plaintiff also alleges that Defendants conspired to deny Plaintiff proper medical care (Doc. 4, p. 10-11). Plaintiff contends that as a result of the two month delay in seeing a civilian medical specialist, his muscle tissue deteriorated "causing a deep four or five inch deep gash in [his] leg, disfiguring, deforming and a vasculitis infection (sic) in the blood vessel[,]" has difficulty walking, has a severe limp, experiences pain when he walks, and is "presently confined to a wheelchair." (Doc. 4, pp. 9-10). Additionally, Plaintiff alleges that the "delayed medical [care] exacerbated [his]

---

[5] Because of the time frame of the scheduled doctors visits, the Court interprets these scheduled visits by Dr. Lopez and another unspecified doctor to be in the course of treatment for Plaintiff's wound.

condition" and that the Defendants "put forth no effort to ensure [he] was seen by a specialist more sooner (sic)." (Doc. 4, p. 10). Thus, according to Plaintiff, this "[i]ntentional failure to provide services acknowledged to be necessary constitutes '[d]eliberate indifference'[.]" (Doc. 4, p. 10).

19. Plaintiff claims that the actions and omissions of the employees of CMS were taken in "accordance with the established policies, practices, and procedures of CMS." (Doc. 4, p. 11). Therefore, "CMS was deliberately indifferent to the Plaintiff's serious medical needs in that policy, practice, procedure and custom in effect at G.K. Fountain Correctional Facility... permitted a person with a serious medical problem[/] need such as the Plaintiff, to be subject to an unreasonable risk of inadequate medical treatment by delaying specialized medical care for two months after Defendant Dr. Benjamin had acknowledged that such care was necessary."[6] (Doc. 4, p. 11).

20. Additionally, Plaintiff claims that the employees of CMS "laughed and made blunt remarks that they didn't care if

---

[6] Plaintiff also claims that CMS and its employees "have been found negligent, committed malpractice, and held liable in providing inadequate health decision and care for inmates in the same similar matters under the company ... that was sued under similar acts of the same employees [.]" (Doc. 32, p. 2). However, there is no evidence in the record to support this assertion.

[his] leg rotted off, in the face of clear proof that [his] leg was deteriorating from the poisonous (sic) of the spider bite." (Doc. 32, p. 2).

21. Plaintiff alleges that the medical provider Defendants denied his repeated request of medical care, failed to report the deterioration of his leg evident from the three to four months of in house inadequate actions, and failed to report to higher superiors within CMS to ensure "the safety of patients to the appropriate State of Alabama medical regulators or authorities to prevent such eight amendment violations ..." (Doc. 32, pp. 2-3).

## II. PROCEDURAL ASPECTS OF THE CASE

1. On July 1, 2010, Plaintiff filed the present § 1983 Complaint (Doc. 4) on the Court's form as required, seeking compensatory and punitive damages, attorney's fees and costs (Doc. 4, p. 11-12) against Defendants CMS, Dr. Benjamin, Billy Stuckey, LPN, Shawn Geohagan, CRNP, Nurse Harris, LPN, and Leslie McMillan, LPN for providing inadequate care and causing delay in providing proper medical treatment for a spider bite that Plaintiff received, thereby violating his Eighth Amendment right against cruel and unusual punishment (Doc. 4).

2. On December 10, 2010, Defendants filed their Special Report denying any violation of Plaintiff's constitutional

rights, as well as including affidavits and Plaintiff's medical records as proof thereof (Doc. 27).

3. The Court converted Defendants' Special Report to a motion for summary judgment on December 10, 2010 (Doc. 28).

4. On January 6, 2011, Plaintiff filed an opposition to Defendants' motion for summary judgment, as well as an affidavit (Docs. 29, 32).

5. These motions and responses are now before the Court.

### III. SUMMARY JUDGMENT STANDARD

1. In analyzing the propriety of a motion for summary judgment, the Court begins with these basic principles. The *Federal Rules of Civil Procedure* grant this Court authority under Rule 56 to render "judgment as a matter of law" to a party who moves for summary judgment.

2. "[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. . . .'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed.R.Civ.P. 56(c)).

3. All of the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*,

398 U.S. 144, 157 (1970); *Jackson v. BellSouth Telecomms.*, 372

F.3d 1250, 1280 (11th Cir. 2004).

4. However, Rule 56(e) states that:

> When a motion for summary judgment is
> properly made and supported, an
> opposing party may not rely merely on
> allegations or denials in its own
> pleading; rather, its response must --
> by affidavits or as otherwise provided
> in this rule -- set out specific facts
> showing a genuine issue for trial.  If
> the opposing party does not so respond,
> summary judgment should, if
> appropriate, be entered against that
> party.

Fed.R.Civ.P. 56(e).

5. "[T]here is no issue for trial unless there is

sufficient evidence favoring the nonmoving party for a jury to

return a verdict for that party. . . .  If the evidence is

merely colorable, . . . or is not significantly probative, . . .

summary judgment may be granted."  *Anderson v. Liberty Lobby,

Inc.*, 477 U.S. 242, 249-50 (1986) (internal citations omitted).

6. "Summary judgment is mandated where a party 'fails to

make a showing sufficient to establish the existence of an

element essential to that party's case, and on which that party

will bear the burden of proof at trial.'"  *Custom Mfg. & Eng'g,

Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 647 (11th Cir. 2007)

(citations omitted).

<u>IV. DISCUSSION</u>

1. As set forth above, Plaintiff alleges in his Complaint that Defendants violated his rights under the Eighth Amendment by failing to exercise reasonable care, denying and/or delaying proper medical care for a spider bite that occurred while Plaintiff was incarcerated in the Fountain Correctional Facility in Atmore, Alabama (Doc. 4, pp. 4-13).

2. The Eighth Amendment provides that, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

3. "The Eighth Amendment's proscription of cruel and unusual punishments prohibits prison officials from exhibiting deliberate indifference to prisoners' serious medical needs." *Campbell v. Sikes*, 169 F.3d 1353, 1363 (11th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

4. In *Sims v. Mashburn*, 25 F.3d 980 (11th Cir. 1994), the Eleventh Circuit delineated the objective and subjective portions of an Eighth Amendment claim as follows:

> An Eighth Amendment claim is said to have two components, an objective component, which inquires whether the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and a subjective component, which inquires whether the officials acted with a sufficiently culpable state of mind.

*Sims*, 25 F.3d at 983 (citing *Hudson v. McMillian,* 503 U.S. 1, 8 (1992)).

5. To meet the objective element required to demonstrate a denial of medical care in violation of the Eighth Amendment, a plaintiff first must demonstrate the existence of an "objectively serious medical need." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003).

6. A serious medical need is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Id.* (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.,* 40 F.3d 1176, 1187 (11th Cir. 1994)). "In either of these situations, the medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm." *Id.* (internal quotation marks and citation omitted).

7. In order to meet the subjective requirement of an Eighth Amendment denial of medical care claim, Plaintiff must demonstrate "deliberate indifference" to a serious medical need. *Farrow*, 320 F.3d at 1243.

8. "Deliberate indifference" entails more than mere negligence. *Estelle,* 429 U.S. at 106; *Farmer v. Brennan,* 511 U.S. 825, 835 (1994).

The Supreme Court clarified the "deliberate indifference" standard in *Farmer* by holding that a prison official cannot be found deliberately indifferent under the Eighth Amendment "unless the official *knows of* and *disregards an excessive risk to inmate health or safety*; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 837, 114 S. Ct. 1970 (emphasis added). In interpreting *Farmer* and *Estelle,* this Court explained in *McElligott* that "deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *McElligott,* 182 F.3d at 1255; *Taylor,* 221 F.3d at 1258 (stating that defendant must have subjective awareness of an "objectively serious need" and that his response must constitute "an objectively insufficient response to that need").

*Farrow*, 320 F.3d at 1245-46 (emphasis in original).

9. "Delay in access to medical attention can violate the Eighth Amendment . . . when it is tantamount to unnecessary and wanton infliction of pain." *Hill*, 40 F.3d at 1187 (internal citations and quotation marks omitted). "Cases stating a constitutional claim for immediate or emergency medical attention have concerned medical needs that are obvious even to a layperson because they involve life-threatening conditions or situations where it is apparent that delay would detrimentally exacerbate the medical problem." *Id.*

15

The "seriousness" of an inmate's medical needs also may be decided by reference to the *effect* of delay in treatment. *Gaudreault,* 923 F.2d at 208; *Monmouth County,* 834 F.2d at 347. Where the delay results in an inmate's suffering "a life-long handicap or permanent loss, the medical need is considered serious." *Id.* An inmate who complains that delay in medical treatment rose to a constitutional violation ***must place verifying medical evidence*** in the record to establish the detrimental effect of delay in medical treatment to succeed. Further, we have held that "[t]he tolerable length of delay in providing medical attention depends on the *nature* of the medical need and the *reason* for the delay." *Harris v. Coweta County,* 21 F.3d 388, 393-94 (11th Cir. 1994) (emphasis added). Consequently, delay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for delay.

*Hill*, 40 F.3d at 1188-89 (emphasis in original and added)

(footnotes omitted).

10. In regards to delay in seeing a civilian medical specialist:

It is a reality of prison life that appointments with physicians or for diagnostic testing for treatment of non-life-threatening medical conditions must be scheduled. It is particularly complicated when an inmate is to be seen by an offsite physician. In such instances, appointments must be made; transportation must be arranged; security must be provided to escort the inmate to the appointment and back; and priority must be given to inmates according to the nature of their medical problems. . . . It is reasonable to expect some delay while arrangements are being made. Patients in the free world often experience similar delays when seeking treatment of non-life-threatening injuries or ailments.

16

*Moore v. Ferrell*, 2009 WL 1579534, *7 (S.D. Ala. 2009) (citation omitted).

11.   "It is well-established that a difference in opinion or a disagreement between an inmate and prison officials as to what medical care is appropriate for his particular condition does not state a claim for deliberate indifference to medical needs." *Del Muro v. Federal Bureau of Prisons*, 2004 WL 1542216, *4 (N.D. Tex. 2004) (unpublished).  As to "the question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment."  *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995)(quoting *Estelle*, 429 U.S. at 107);

12.   The Court assumes, for purposes of the parties' motion for summary judgment, that Plaintiff's spider bite wound constitutes an objectively serious medical injury.  Therefore, the Court turns to the second, subjective element of Plaintiff's claim, that is, whether Defendants were deliberately indifferent to Plaintiff's serious medical need to constitute a violation of the Eighth Amendment through the various alleged actions.

13.   In regards to the Plaintiff's complaint against Nurse Harris, Plaintiff alleges that he was bitten by a spider on or

about July 1, 2008, but his treatment by Nurse Harris constituted the first delay since she said she could do nothing and gave him aspirin (Doc. 4, p. 4). The record before the Court shows otherwise. As discussed above, in order to constitute "deliberate indifference," Defendant must have known of and disregarded an excessive risk to Plaintiff's health. *Farrow*, 320 F.3d at 1245-46. Instead of disregarding Plaintiff's health, Nurse Harris attended to the Plaintiff, even though her words may have indicated the contrary. According to Plaintiff's medical records, in addition to examining Plaintiff and giving him aspirin, she also cleaned and cared for Plaintiff's wound (Doc. 27-3, p. 6).

14. Plaintiff also asserts that Defendants violated his Eighth Amendment constitutional rights since Plaintiff did not receive daily bandage changes (Doc. 4, pp. 4-13). However, the records shows that daily wound changes were ordered for the times Plaintiff alleges he was denied proper medical care, i.e., July 2008 to October 2008, and he received wound care and attention, at the very least, each time he was attended to by a medical attendant, which was at least approximately 30 times during the July 2008 to October 2008 timeframe (Doc. 27-3, pp. 7, 12-21). Additionally, during July 2008, the record reflects that bandage changes occurred (Doc. 27-3, pp. 20-21, Doc. 27-4,

pp. 21-23), but Plaintiff refused to have his bandage changed, at least on one occasion (see Doc. 27-4, p. 24). Again, in order to constitute "deliberate indifference," Defendants must have known of and disregarded an excessive risk to Plaintiff's health. *Farrow*, 320 F.3d at 1245-46. The Defendants provided medical care to the Plaintiff on a regular basis as soon as Plaintiff notified personnel of his bite (*see supra* I. ¶¶ 9-17), and Plaintiff himself on occasion refused the provided medical treatment and care (*Id.*).

15. Plaintiff also asserts that Defendants violated his Eighth Amendment constitutional rights since he underwent surgery that he claims permanently damaged his muscles and leg tissue and caused disfigurement. The Court finds otherwise since there is no medical evidence in the record to verify this claim. The mere fact that Plaintiff did not like the outcome of his surgery (i.e. disfigurement) does not constitute medical mistreatment by Defendant Dr. Benjamin. The fact that Plaintiff disagrees with the efficacy of the treatment recommended or simply would have preferred a different course of treatment does not state a valid claim of medical mistreatment under the Eighth Amendment. *Del Muro*, 2004 WL 1542216 at *4. There is no evidence that the result of Plaintiff's surgery caused an excessive risk to Plaintiff's health and was not in fact

necessary to protect Plaintiff's health.  Moreover, according to
the medical record, as of February 9, 2009, Dr. Lopez noted that
the Plaintiff's ischemic ulcer in the right leg had resolved
(Doc.  27-3, p. 9). Thus, the medical record belies Plaintiff's
complaint of continuous severe medical threat to his health as a
result of his surgery.[7]

16.  Plaintiff claims that he did not see a "Civilian
Medical Specialist until September, 2008, two months after []
Dr. Benjamin recommended special care", which constitutes an
Eighth Amendment violation (Doc. 4, pp. 4-13).  The mere fact
that Plaintiff did not see a civilian medical specialist until
September 2008 does not constitute "deliberate indifference."
"Cases stating a constitutional claim for immediate or emergency
medical attention have concerned medical needs that are obvious

---

[7] Plaintiff complains of a limp and disfigurement, but has
placed no verifying medical evidence in the record that as a
result of delay in care that these detrimental effects occurred.
In addition, if in the alternative Plaintiff complains of
dissatisfaction of the outcome of the debridement procedures,
the record demonstrates that Defendants exercised their
professional medical judgment and that Plaintiff received
frequent medical attention after complaining about the spider
bite. *See Thompson v. Carani*, 2008 WL 4057116, *4-6 (S.D. Ga.
Aug, 28, 2008)(adopting the Report and Recommendation granting
the motion for summary judgment in favor of Defendant where
Plaintiff complained of limp and scarring as a result of spider
bites, but had no verifying medical evidence and was merely
dissatisfied with the treatment and outcome of the treatment,
which did not establish deliberate indifference).

even to a layperson because they involve life-threatening conditions or situations where it is apparent that delay would detrimentally exacerbate the medical problem." *Hill*, 40 F.3d at 1187. "An inmate who complains that delay in medical treatment rose to a constitutional violation must place *verifying medical evidence* in the record to establish the detrimental effect of delay in medical treatment to succeed." *Id.* at 1188 (emphasis added). The medical evidence belies Plaintiff's assertion that his medical condition had reached a point of deterioration so severe that Defendants knew that the bite wound posed an excessive risk to his health, and they simply ignored it. There is no "verifying medical evidence" that the two month delay in seeing a civilian medical specialist did in fact detrimentally exacerbate Plaintiff's medical condition. *Hill*, 40 F.3d at 1188-89.

17. Additionally, the medical record indicates that Plaintiff himself exacerbated his condition in that he had poor circulation since 2006 (Doc. 27-3, pp. 23-24), refused to accept medical treatment for his poor circulation (Doc. 27-3, p. 22), and this poor circulation contributed to his inhibited healing of the spider bite wound (Doc. 27-1, pp. 3-4).

18. The undisputed evidence shows that Plaintiff received extensive medical treatment from the Fountain health care unit

upon notifying personnel of his bite, and such care continued past the time he saw the civilian medical specialist.

19.  "When a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation." *Waldrop v. Evans*, 871 F.2d 1030, 1035 (11th Cir. 1989).

20. Considering all of the circumstances surrounding the treatment that Plaintiff received related to his spider bite injury in July 2008, the Court cannot say that any of the medical staff Defendants were deliberately indifferent to Plaintiff's injury.

21.  Since the medical staff Defendants were not deliberately indifferent to Plaintiff's spider bite and medical needs arising thereof, CMS is also not liable for any deliberate indifference.  Thus, Plaintiff has failed to establish the subjective element of his Eighth Amendment claim, and Defendants are entitled to summary judgment.

## V.  CONCLUSION

Based on the foregoing, it is recommended that the motion for summary judgment of Defendants CMS, Dr. Delano Benjamin, Billy Stuckey, LPN, Shaun Geohagan, CRNP, Jennifer Covan, LPN ("Nurse Harris"), and Leslie McMillan, LPN (Doc. 27) be granted, and that Plaintiff's action against these Defendants be dismissed with prejudice.

The instructions which follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

DONE this 27th day of April, 2011.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND
RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND
FINDINGS CONCERNING NEED FOR TRANSCRIPT**

l.   *Objection*.   Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to  do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982) (*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days[15] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

---

[4] Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]"  Fed.R.Civ.P. 72(b)(2).

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.  ***Transcript (applicable Where Proceedings Tape Recorded)***. Pursuant to 28 U.S.C. § 1915 and FED. R. CIV. P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.